UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BAYMONT FRANCHISE SYSTEMS, INC., successor in interest to AMERIHOST FRANCHISE SYSTEMS, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>D&T HOTELS, LLC, an Ohio limited liability company; PALWINDER S. DHILLON, an individual; and JAGROOP S. TOOR, an individual,<br><br>Defendants. | Civ. No. 13-cv-5322 (KM)(MAH)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the unopposed motion of Plaintiff Baymont Franchise Systems, Inc. ("Baymont") for default judgment against Defendant D&T Hotels, LLC ("D&T"). For the reasons set forth below, I will enter a default judgment. Baymont is awarded $256,923.33, comprising: (i) $65,614.43 in outstanding fees and interest; (ii) liquidated damages of $122,000; (iii) $58,716.16 in interest on the liquidated damages; and (iv) $10,592.74 in attorneys' fees and costs. Post-judgment interest from this date will be applied at the appropriate rate in accordance with 28 U.S.C. § 1961.

**I.    BACKGROUND**

Baymont is a Delaware corporation with its principal place of business in Parsippany, New Jersey. (Compl., Dkt. No. 1, ¶1) B&T is an Ohio-based limited liability company with its principal place of business in Wilmington, Ohio. (*Id.* at ¶2)

1

The Agreements

On October 10, 2006, Baymont's predecessor in interest, Amerihost Franchise Systems, Inc., entered into a Franchise Agreement with D&T for the operation of a 61-room Amerihost guest-lodging facility (the "Facility") in Wilmington, Ohio. (Fenimore Aff., Dkt. No. 27-3, ¶3) The agreement had a term of 20 years. (*Id.* at ¶4) On December 27, 2006, the parties executed an amendment to the Franchise Agreement according to which D&T agreed to convert the Facility to a Baymont-branded franchise.

Under Section 7 and Schedule C of the Franchise Agreement, D&T was required to make periodic payments to Baymont for, *inter alia*, royalties, system assessment fees, taxes, interest, and access to its central reservation system (collectively, "Recurring Fees"). (*Id.* at ¶6) Section 7.3 of the Franchise Agreement states that the interest on such Recurring Fees, as well as any other amounts past due, would accrue at the rate of 1.5% per month. (*Id.* at ¶7)

Section 11.2 lists the circumstances under which Baymont could terminate the Franchise Agreement, including when D&T "discontinue[s] operating the Facility as a Chain Facility," or "lose[s] possession or the right to possession of the Facility." (Franchise Agreement, Section 11.2, Ex. A, Fenimore Aff., Dkt. No. 27-3, at 21) In the event that the Franchise Agreement is terminated pursuant to Section 11.2, Section 13.2 requires D&T to pay "all amounts owed to [Baymont]" no later than 10 days after termination. (*Id.* at 29) Additionally, Section 12.1.1 requires D&T to pay within 30 days liquidated damages equivalent to $2,000 multiplied by the number of rooms in the Facility. (*Id.* at 28; *see also* Fenimore Aff., ¶11)

Section 17.4 states that if legal action is necessary "to enforce this Agreement or collect amounts owed under this Agreement," then the "non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees." (Fenimore Aff., ¶12)

2

On the same day that the parties executed the Franchise Agreement, the constituent members of D&T—Palwinder Dhillon and Jagroop Toor—executed a personal guaranty of D&T's obligations under the agreement. (*Id.* at ¶13)

The Defendant's Default and Termination

Baymont alleges that on January 4, 2012, D&T unilaterally terminated the Franchise Agreement by ceasing to operate the Facility as a Baymont-branded franchise. (*Id.* at ¶16) In a letter dated February 17, 2012, Baymont stated that it had "received photographs on January 4, 2012 (the termination date) verifying that D&T Hotels, LLC...closed the Facility." (Ex. C, Fenimore Aff., Dkt. No. 27-3, at 47) The letter advised D&T that the Franchise Agreement was terminated as of that date and demanded payment of $22,337.96 in outstanding Recurring Fees, as well as $122,000 in liquidated damages. (*Id.*)

This Action

On September 12, 2014, Baymont filed this action for a declaratory judgment against D&T, Dhillon, and Toor. Baymont seeks (i) $65,614.43 in outstanding fees and interest; (ii) liquidated damages of $122,000; (iii) $58,716.16 in interest on the liquidated damages; and (iv) attorneys' fees totaling $7,800 and costs totaling $2,792.74. Baymont has dismissed the claims against Dhillon and Toor (Dkt. Nos. 26, 28), leaving D&T as the sole defendant.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

## II. DISCUSSION

### A. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the

3

defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Service of a corporate entity, such as D&T, may be made by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" or by following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made. Fed. R. Civ. P. 4(h)(1). New Jersey law states in relevant part that service on a corporation may be made:

> [B]y serving a copy of the summons and complaint . . . on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties.

N.J. Ct. R. 4:4-4(a)(6).

If, despite diligent efforts, personal service cannot be made in accordance with N.J. Ct. R. 4:4-4(a)(1), *in personam* jurisdiction may be obtained over any defendant by substituted or constructive service, in accordance with N.J. Ct. R. 4:4-4(b)(1)(C) by:

> [M]ailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: (1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode; (2) a minor under the age of 14 or a mentally incapacitated person, addressed to the person or persons on whom service is authorized by paragraphs (a)(2) and (a)(3) of this rule; (3) a

4

> corporation, partnership or unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its principal place of business, or to its registered office.

N.J. Ct. R. 4:4-4(b)(3).

Here, Baymont personally served the Complaint on D&T on September 19, 2013. (Cert. of Bryan Couch in Supp. of Mot. for J. by Default ("Couch Cert."), Dkt. No. 27-2, ¶5) D&T's time to respond to the Complaint has long since expired. On April 23, 2014, the clerk entered default. (Dkt. No. 23) Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist*, 756 F.2d at 18–19.

### B. Three Factor Analysis

I must now evaluate the following three factors: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir.1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a default judgment.

#### 1. Factor 1

The evaluation of the first factor is complicated, of course, by D&T's failure to answer or oppose this motion. My independent review of the record, however, does not suggest that the claims asserted by Baymont are legally flawed or that D&T could mount a meritorious defense. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that Baymont has successfully stated claims for relief.

5

The Complaint asserts six overlapping causes of action, which, in essence, amount to a claim for breach of contract against B&T. Under New Jersey law, a prima facie case of breach of contract requires that the plaintiff show: (1) a contract between the parties; (2) a breach of that contract; and (3) damages resulting from the breach. *See Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985); *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). The facts alleged in the Complaint establish that those elements are satisfied here. The declaration submitted in support of Baymont's motion and the exhibits annexed thereto corroborate those factual allegations. The Franchise Agreement is a valid and enforceable contract. B&T breached that contract by failing to operate the Facility as a Baymont-branded franchise for the agreed upon term. Baymont has accrued damages as a result of this breach. In sum, the facts alleged by Baymont state a claim for breach of the Franchise Agreement against D&T. I cannot discern a meritorious defense to this claim from the record before me.

### 2. Factors 2 and 3

The second and third factors also weigh in favor of default. D&T was properly served on September 19, 2014, but has failed to appear and defend itself in any manner. It is clear that Baymont has been prejudiced by this dereliction because it has been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (find that a defendant's failure to answer prejudices the plaintiff). Additionally, unless there is evidence to the contrary, D&T's failure to answer the Complaint is sufficient to prove its culpability in the default. *Id.* In this case, "there is nothing before the Court to show that the Defendant's failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is no evidence that the defendant's failure to answer the

Complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, the three factors support the entry of default judgment against D&T. I therefore find that default judgment is warranted.

### C. Remedies

Baymont seeks the following four forms of monetary relief: (i) $65,614.43 in outstanding fees and interest; (ii) liquidated damages of $122,000; (iii) $58,716.16 in interest on the liquidated damages; and (iv) $10,592.74 in attorneys' fees and costs.

#### 1. Recurring Fees, Liquidated Damages, and Interest

I will grant Baymont's request for the amount owed as Recurring Fees and interest, as set forth in Section 7 and Schedule C of the Franchise Agreement. The itemized statement submitted in support of Baymont's motion details unpaid Recurring Fees dating back to September 2009. (Ex. D, Fenimore Aff., Dkt. No. 27-3, at 56) The last entry in that statement, dated March 2013, lists the outstanding balance on the account as $65,614.43.[1] This amount includes interest which accrued at the rate of 1.5% per month as set forth in Section 7.3 of the License Agreement. I will award the full amount of $65,614.43.

I will also grant Baymont's request for $122,000 in liquidated damages and $58,716.16 in interest. These amounts are determined by Sections 12.1.1 and 7.3 of the Franchise Agreement.

---

[1] Baymont also says, however, says that this amount reflects the total amount of Recurring Fees owed by D&T "as of September 2, 2014." (Fenimore Aff., Dkt. No. 27-3, ¶18)

7

Section 12.1.1 states that if D&T terminates the Franchise Agreement after the end of third license year, and if Baymont is unable to determine the occupancy rate of the Facility according to a formula set forth in that section, then D&T will "pay [Baymont] $2,000 multiplied by the number of guest rooms [D&T] is then authorized to operate under...this Agreement." (Franchise Agreement, Section 12.1.1, Ex. A., Fenimore Aff., Dkt. No. 27-3, at 23) Baymont has chosen to calculate its liquidated damages in this manner, so I must assume that it was unable to determine the Facility's occupancy rate. The Facility was authorized to operate 61 guest rooms, which yields a figure of $122,000.

Section 7.3 of the License Agreement establishes a monthly interest rate of 1.5% on all unpaid sums owed to Baymont. I agree with Baymont that this interest rate applies to the total amount owed as liquidated damages. (Fenimore Aff. Dkt. No. 27-3, ¶25) I also agree as to the date on which the interest began to accrue: February 4, 2012 (*i.e.*, 30 days after D&T terminated the License Agreement. (*Id.*) The amount of interest owed by D&T is calculated from that date through October 6, 2014, which was the return date for Baymont's motion for default judgment. The $58,716.16 figure is calculated by multiplying $122,000 by 18% (*i.e.* 1.5% per month), which equals $21,960 in interest per year. That amount is then divided by 365 days to equal $60.16 in interest per day. When the per diem interest of $60.16 is multiplied by 976 days—the number of days between the date of termination and the return date of the motion—the interest owed is $58,716.16. That is a permissible method of calculating interest, and I will uphold it.

### 2. Attorneys' Fees and Costs

As to attorneys' fees and costs, too, I adopt Baymont's analysis. Baymont has adequately documented its attorneys' fees, which do not seem unreasonable or disproportionate. (*See* License Agreement, Section 17.4, Ex. A, Fenimore Aff., Dkt. No. 27-3, at 28 (giving the prevailing party the right to

8

recover reasonable attorneys' fees); Ex. D, Couch Cert., Dkt. No. 27-2, at 13-40 (detailing fees and costs)) I will therefore award $7,800 in attorneys' fees and $2,792.74 in costs, for a total of $10,592.74.

## III. CONCLUSION

For the foregoing reasons, a default judgment will be entered against defendant D&T and in favor of plaintiff Baymont, in the total amount of $256,923.33, with post-judgment interest from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

An appropriate order and judgment will issue.

Dated: August 5, 2015

_____
KEVIN MCNULTY, U.S.D.J.